NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

| | |
|---|---|
| CURTIS LAASKO,<br><br>　　　　　　　　　　　Lead Plaintiff<br><br>and<br><br>BENOIT ALBIGES, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　　Named Plaintiff,<br><br>　　　　v.<br><br>ENDO INTERNATIONAL, PLC, *et al.*,<br><br>　　　　　　　　　　　Defendants. | Case No. 20cv07536(EP)(MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

　　This matter comes before the Court upon Defendants Endo International, PLC ("Endo" or "Company"), Paul V. Campanelli, Blaise Coleman, Mark T. Bradley, and Matthew J. Maletta's (collectively "Individual Defendants") ("Endo" and "Individual Defendants" together referred to as "Defendants") Motion to Dismiss the Second Amended Class Action Complaint ("SAC") pursuant to Fed. R. Civ. P. 9(b), 12(b)(6), and Section 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The Court decides the matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1b. For the reasons set forth below, the Defendants' motion is GRANTED, and the SAC is DISMISSED with prejudice.

I.     BACKGROUND

Plaintiffs represent a class of purchasers of Endo common stock between August 8, 2017 and August 10, 2021 ("the Class Period").  Endo is a publicly-traded pharmaceutical company that manufactures, markets, and sells generic and branded pharmaceuticals, including opioids, in the U.S. and internationally.  Defendants are Endo; Paul V. Campanelli, former Endo President, Chief Executive Officer ("CEO"), and Chairman of Endo's Board of Directors ("Board"); Blaise Coleman, former Endo Executive Vice President ("EVP") and Chief Financial Officer ("CFO"), and current Endo President and CEO; Mark T. Bradley, former Endo Senior Vice President ("SVP"), and current Endo CFO and Board member; and, Matthew J. Maletta, current Endo EVP, Chief Legal Officer ("CLO"), and Secretary.

Plaintiffs' First Amended Complaint ("FAC") alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  It alleged that Defendants made materially false or misleading statements to investors because Defendants allegedly knew or recklessly disregarded information undermining their statements, Defendant Campanelli received an allegedly suspicious bonus and resigned under questionable circumstances, and the opioid-related litigation threatened Endo's survival.  FAC ¶¶ 148, 175, 217, 317-23.  After holding oral argument on August 30, 2021, the Court granted Defendants' motion to dismiss the FAC.  D.E. 44.  The Court found the alleged materially false or misleading statements inactionable and that it could not infer scienter from the mere discussion of opioid-related litigation at company meetings.  D.E. 46 at Tr. 22:5-28:9, 33:16-34:12.

Plaintiffs' SAC alleges the same Exchange Act violations as those raised in its FAC.  It alleges that Defendants made materially false or misleading statements to investors when they allegedly engaged in a coordinated campaign to obstruct opioid-related litigation and misrepresented the Company's

2

financial condition during the Class Period. Plaintiffs SAC makes nearly identical allegations as those that the Court found deficient in its FAC. Defendants move to dismiss, contending that Plaintiffs have failed to adequately allege the elements of their securities claims.[1]

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

Courts may only consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based on those documents. *Pension Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Courts are not to give credit to a complaint's "bald assertions" or "legal conclusions." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

Independent of the applicable standard under Rule 12(b)(6), Fed. R. Civ. P. 9(b) "imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re*

---

[1] Defendants previously moved to dismiss raising the same arguments as they do in the SAC. D.E. 34. Judge Arleo granted that motion after finding that Plaintiffs' FAC failed to sufficiently plead the first two elements of a securities fraud claim. D.E. 46.

*Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Satisfying this heightened pleading standard requires that a plaintiff state the circumstances of his alleged cause of action with "sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)).  At a minimum, this requires that the plaintiff allege the "'who, what, when, where and how'" of the events at issue."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 76-77 (3d Cir. 2006) (quoting *In re Rockefeller*, 311 F.3d at 216).

Additionally, the PSLRA requires an even higher pleading standard for plaintiffs bringing private securities fraud actions.  *In re Suprema*, 438 F.3d at 276.  First, the complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity."  *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007); *see also* 15 U.S.C. § 78i-4(b)(1).  Second, the complaint must, "with respect to each act or omission alleged to violate this [chapter], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78i-4(b)(2).  Like Rule 9(b), both provisions of the PSLRA require facts to be pled with "particularity."  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (finding that the PSLRA pleading standard "requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story.").

### III.    ANALYSIS

#### A.    Plaintiffs Fail to Sufficiently Plead a Violation of Section 10(b) and Rule 10b-5

Defendants contend that the SAC fails to state a Section 10(b) claim under Rule 9(b) and the PSLRA because it does not allege with particularity that: (1) any of the challenged statements were materially misleading; (2) Defendants acted with fraudulent intent; and (3) the alleged fraud caused Plaintiffs' losses.

4

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security…any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"  15 U.S.C. § 78j(b).  Rule 10b-5, promulgated thereunder by the SEC, makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact in order to make the statements made in light of the circumstances under which they were made, not misleading…in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.  To state a claim for relief under Section 10(b) and Rule 10b-5, a plaintiff must show: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008).

1.  *Whether Plaintiffs Have Alleged that Defendants Made a Materially False or Misleading Statement*

Defendants assert that Plaintiffs have not shown that Defendants made materially false or misleading statements regarding the opioid-related litigation and Endo's financial condition over the alleged four-year Class Period.  SAC ¶¶ 1, 288-475.  Liability attaches for both affirmative misstatements and misleading omissions, but the latter can only give rise to liability where the defendant had an affirmative duty to disclose the information in question.  *Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000).  The statement or omission is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 538 (citations omitted).  A statement is not material if it involves "subjective analysis or extrapolations, such as opinions, motives and intentions, or general statements of optimism."  *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865,

5

872 (3d Cir. 2000); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1427 (noting "claims that these kinds of vague expressions of hope by corporate managers could dupe the market have been almost uniformly rejected by the courts.").

a.      *Defendants' opioid-related litigation disclosures were not false or misleading*

Plaintiffs allege that Endo had an affirmative duty to disclose its alleged obstruction of opioid-related litigation because it created the impression that it was vigorously defending the same litigation. *See, e.g.*, SAC ¶¶ 291-93.  According to Plaintiffs, Endo's SEC filings were misleading because the filings represented that Endo was "vigorously" defending against opioid-related litigation, when it was actually engaged in a concealed campaign to obstruct that same litigation by, *inter alia*, allegedly failing to disclose the existence of a data warehouse with relevant documents, delaying the production of documents that contradicted sworn testimony until trial, exploiting withheld documents to gain a litigation advantage, omitting data sets from searches without informing plaintiffs it was doing so, falsely stating document productions were complete, and making false statement to plaintiffs and the court.  SAC ¶¶ 147-270.

The Court rejects Plaintiffs' allegations for a few reasons.  First, during oral argument related to Defendants' motion to dismiss the FAC, the Court reviewed and rejected Plaintiffs' characterization that Defendants were "vigorously" denying the opioid-related litigation on the merits, which if that were the case, then Plaintiffs' allegation may not have been deficient, and instead informed Plaintiffs:

> I [the Court] don't want to fight with you today on this argument, but I asked you what the statements were where they vigorously denied on the merits, and we don't see eye to eye on this point. It's not a vigorous denial on the merits. Trying to profit at people's health, he [Defendant Maletta] denied that, and he said, we will vigorously defend the lawsuit. That's a little bit different than saying the lawsuits are meritless, the lawsuits are frivolous.

D.E. 46 at Tr. 14:4-12.  The Court did not stop there and warned Plaintiffs:

> The Amended Complaint alleges that these statements [in the SEC filings disclosing pending opioid-related litigation and that Endo will continue to vigorously defend itself and explore other options as appropriate in the

6

> Company's best interests] "misleadingly downplay the allegations in the actions, did not fully apprise investors of the extent of the Company's misconduct in marketing and selling opioids, and did not advise investors that the Company faced billions in liability in New York for insurance fraud as a result of Endo's misconduct…" […] So the law is pretty clear, at least in the *Galena* case, to start […] states that a company "need not make a complete mea culpa when disclosing the investigation and its potential legal implications." As in *Galena*, Plaintiffs here "do not claim that Defendants made a misrepresentation or actionable omission concerning the nature of the investigation itself nor as to the potential legal liability faced by [the Company], but rather claim that the disclosures were misleading because they concealed the true extent of the company's legal exposure." The *Galena* court rules that that "theory is not supported by precedent." The "law required [the Company] to disclose the [opioid actions] and their potential legal ramifications, which [the Company] appears to have done."

D.E. 46 at Tr. 22:5-23:3. Rather than remedying their pleading, Plaintiffs doubled down on their previous allegations that Defendants were misleading investors with respect to their response to the opioid-related litigation. In the SAC, Plaintiffs state several times that "Defendants assured investors they would vigorously contest the merits of the opioid-related actions, the allegations of wrongdoing by Endo were 'patently offensive,' and that they were 'proud to discuss their business practices."[2] SAC ¶¶ 9, 147, 272. Plaintiffs' allegations in the SAC are simply a repackaging of the allegations raised in the FAC, which the Court has already rejected.

Second, after reviewing the repackaged allegations in the SAC, it is evident to the Court that Endo's disclosures regarding the opioid-related litigation were not false or misleading. Plaintiffs cherry-pick certain opioid-related litigation where Defendants' misconduct during discovery led a handful of courts to, *inter alia*, enter default judgment, but Plaintiffs ignore similar opioid-related litigation where courts issued decisions in favor of Defendants. *See* D.E. 57 at Exs. 4, 6. If Endo was not "vigorously" defending against opioid-related litigation, as stated in the Company's SEC filings, then it would not have any favorable decisions. But it does, which leads the Court to conclude that Plaintiffs have not pled

---

[2] Judge Arleo already rejected Plaintiffs' characterization of Defendant Maletta's use of "patently offensive" during oral argument related to Defendants' motion to dismiss the FAC. D.E. 46 at Tr. 12:15-16, 13:8-14:2.

specific facts as to why Endo's disclosures were false or misleading. *See Goldsmith v. Weibo Corp.*, 2018 U.S. Dist. LEXIS 95592, at *34 (D.N.J. June 6, 2018) (finding that the plaintiff did not meet the PSLRA's burden requiring that a securities fraud plaintiff "specify…the reason or reasons why the statement is misleading[]" where the complaint itself quoted pertinent sections from the defendants' SEC filings, but failed to "allege any facts providing a plausible basis for connecting Defendants' disclosures with the misleading message Plaintiff maintains was communicated to investors.") (internal citations and quotations omitted).

Lastly, Endo met any duty it had to disclose under the federal securities laws when it disclosed the pending opioid-related litigation. It was not required to disclose further details about that same litigation that were readily available in the public domain. *See, e.g.*, SAC ¶¶ 289, 292, 302, 304, 314; *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) ("Although the underlying philosophy of federal securities regulation is that of full disclosure, there is no duty to disclose information to one who reasonably should be aware of it.") (internal citations and quotations omitted); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 249-50 (S.D.N.Y. 2003) ("[T]he Defendants cannot be held liable for failing to disclose…publicly available information."). Again, Plaintiffs fail to plead with particularity why Endo's straightforward statements about how it was prepared to vigorously defend itself in the opioid-related litigation were false or misleading.

b. *Defendants' opioid-related litigation risk disclosures were forward-looking statements accompanied by meaningful cautionary language*

Plaintiffs also allege that Endo's risk disclosures concerning pending and potential future opioid-related litigation and liability were materially false or misleading because they were generic catch-all provisions that were not tailored to Endo's actual known risks for further opioid-related litigation. *See, e.g.*, SAC ¶¶ 292-93, 304-09. Plaintiffs cannot claim that Defendants had a duty to disclose additional

details associated with the risks of opioid-related litigation and liability where Defendants' risks were merely speculative. *See Williams v. Globus Med., Inc.*, 869 F.3d 235, 243 (3d Cir. 2017) (finding that the company did not have a duty to disclose a risk that had not "actually materialized" at the time of the allegedly misleading prior disclosure). Consequently, Plaintiffs fail to provide any legitimate explanation as to why these particular disclosures were materially false or misleading. *See In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *9 (S.D.N.Y. Mar. 28, 2018) (explaining that "[i]n many cases, general or boilerplate disclosures of future regulatory risk would not cause a reasonable investor to believe that the company faced no current regulatory risks" and that "the more specific the caution, the more likely it is to mislead a reasonable investor.") (citations omitted).

c.  *Defendants' liquidity and cash reserves risk disclosures were forward-looking statements accompanied by meaningful cautionary language*

Similarly, Plaintiffs allege that Endo made materially false or misleading statements with respect to liquidity risk and cash reserves disclosures. According to Plaintiffs, those disclosures consisted of generic catch-all provisions that were not tailored to Endo's actual known risks with respect to the significant potential for further opioid-related litigation. *See, e.g.*, SAC ¶¶ 292, 296-97, 304-09. But again, Plaintiffs fail to provide any legitimate explanation as to why Defendants would have been required to speculate on risks that had not yet materialized. *See Williams v. Globus Med., Inc.*, 869 F.3d at 243; *see also In re Mylan N.V. Sec. Litig.*, 2018 WL 159585, at *9.

Furthermore, Endo's disclosures regarding liquidity risk and cash reserves are forward-looking statements within the definition provided in the PSLRA. 15 U.S.C. § 78u-5(i)(1)(A) and (D). The PSLRA provides a safe harbor provision for forward-looking statements so long as those statements are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i).

9

Where a forward-looking statement is accompanied by meaningful cautionary language, the alleged false or misleading statement is rendered immaterial as a matter of law. *EP MedSystems, Inc. v. EchoCath, Inc.*, 235 F3d 865, 873 (3d Cir. 2000); *In re Donald J. Trump Casino Sec. Litig.*, 7F.3d 357, 371-72 (3d Cir. 1993), *cert. denied*, 114 S. Ct. 1219 (1994). Cautionary language is sufficient if it is "extensive, specific, and directly related to the alleged misrepresentation." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 243 n.3 (3d Cir. 2004). This is another example of Plaintiffs ignoring the Court's guidance given during oral argument related to Defendants' motion to dismiss the FAC: "[t]he Company's statements regarding its expected ability to meet its liquidity requirements are forward-looking statements that are not actionable. The 3rd circuit has stated that the word "expected" is "a term that identifies the statement as forward-looking." D.E. 46 at Tr. 27:8-18 (citations and quotations omitted).

Here, Endo's forward-looking statements regarding liquidity risk and cash reserves were all accompanied by extensive and detailed cautionary language. *See, e.g.*, SAC ¶¶ 331, 377. The cautionary language goes so far as to include an extensive list of the types of developments and unexpected expenses that could affect the Company's liquidity and cash reserves.[3] Considering this meaningful cautionary language, a reasonable factfinder could not conclude that the alleged false or misleading statements would

---

[3] For example, Endo's 3Q17 10-Q provided the following forward-looking statement accompanied by meaningful cautionary language:
> We expect cash generated from operations together with our cash, cash equivalents, restricted cash and the revolving credit facilities to be sufficient to cover cash needs for working capital and general corporate purposes, contingent liabilities, payment of contractual obligations, principal and interest payments on our indebtedness, capital expenditures, ordinary share repurchases and any regulatory and/or sales milestones that may become due over the next year. However, on a longer term basis, we may not be able to accurately predict the effect of certain developments on the rate of sales growth, such as the degree of market acceptance, patent protection and exclusivity of our products, the impact of competition, the effectiveness of our sales and marketing efforts and the outcome of our current efforts to develop, receive approval for and successfully launch our product candidates. Additionally, we may not be successful in implementing, or may face unexpected changes or expenses in connection with our strategic direction, including the potential for opportunistic corporate development transactions. Any of the above could adversely affect our future cash flows.

SAC ¶ 306.

10

influence a reasonable investor's investment decision. *In re Donald J. Trump Casino Sec. Litig.*, 7F.3d at 369, 372 (finding that "no reasonable jury could conclude that the subject projection materially influenced a reasonable investor" where "extensive yet specific cautionary language" was provided).

Notably, the Court gave Plaintiffs the opportunity to explain their liquidity risks and cash reserves-related allegations during oral argument related to Defendants' motion to Dismiss the FAC and Plaintiffs rejected that opportunity. D.E. 46 at Tr. 20:18-21:7.

d.      *Defendants' remaining statements are opinions and puffery*

Plaintiffs next allege that Endo made materially false or misleading statements regarding the Company's business, operational, and compliance policies. For example, Plaintiffs contrast Defendant Maletta's statement that it was the Company's "view" that it was doing everything properly with Endo allegedly taking several actions that were contrary to those same policies. *E.g.*, SAC ¶¶ 274, 314, 315, 353-54, 478. Plaintiffs fail to sufficiently plead why the vague statement in the Company's 2018 press release is anything more than a generalized, immaterial statement that a reasonable investor would not rely on. Notably, this is another example of Plaintiffs ignoring the Court's guidance. During oral argument related to Defendants' motion to dismiss the FAC, the Court informed Plaintiffs that it considered several statements cited to by Plaintiffs as inactionable opinions: "Here, Defendants' statements denying the allegations in the complaints and its 'view' that they have 'done everything properly' are non-actionable opinion statements because the Amended Complaint does not adequately allege that the statements were not honestly believed, lack reasonable basis, or any omitted facts that render them misleading." D.E. 46 at Tr. 25:3-9.

Courts view vague and optimistic statements as "puffery" and because "a reasonable investor would not base decisions on such statements," they are not material. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1427; *Fan v. StoneMor Partners LP*, 927 F.3d 710, 716 (3d Cir. 2019); *In re Advanta*

11

*Corp. Sec. Litig.*, 180 F.3d at 538-39.  But, depending on the context, if a company repeatedly addresses a particular subject, then the company effectively transforms the statement into a material one by signaling to a reasonable investor that he may rely on the statement.  *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992) (finding that where a defendant repeatedly addresses and affirmatively characterizes management practices as 'adequate,' 'conservative,' 'cautious,' and the like, the subject 'is in play.'").  Endo did not make repeated assurances about its policy to comply in all circumstances with applicable laws, regulations, and industry guidance governing the sale and marketing of pharmaceutical products, but made only one generalized statement in the context of a disclosure that it had received a grand jury subpoena.  SAC ¶ 478.

Along similar lines, Defendant Maletta's statement to the Philadelphia Inquirer is nothing more than an opinion.  *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014) (finding that "[o]pinions are only actionable under the securities law if they are not honestly believed and lack a reasonable basis.").[4]  Plaintiffs have not pointed to any substantive reasons as to why Defendants did not honestly believe or have a reasonable basis for believing the opinion statement.[5]  As a result, Plaintiffs have not sufficiently pled with particularity why Defendants' statements in the 2018 press release and to the Philadelphia Enquirer are materially false or misleading.

2. *Whether Plaintiffs Have Alleged Particularized Facts Giving Rise to a Strong Inference that Defendants Acted with Scienter*

Furthermore, Defendants assert that Plaintiffs have not satisfied the PSLRA's scienter pleading standard, which requires that the complaint state with particularity "the facts giving rise to a strong inference that the defendant[s] acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  To

---

[4] Judge Arleo previously raised this same issue up with Plaintiffs with respect to their FAC.  D.E. 46 at Tr. 23:19-25:21.
[5] Plaintiffs merely include conclusory allegations that Defendants "knew" with nothing more to connect the dots.  *See* SAC ¶ 290.

determine whether a complaint's scienter allegations can survive a motion to dismiss, courts engage in a comparative evaluation, considering "not only inference urged by the plaintiff but also competing inferences rationally drawn from the facts alleged." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "A reckless statement is one involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 535. The facts pleaded must lead to a strong inference that "the danger of misleading investors was either actually known by Defendants or so obvious that [they] must have been aware of it." *Fain v. USA Techs., Inc.*, 707 F. App'x 91, 96 (3d Cir. 2017) (internal citations and quotations omitted).

Even if Plaintiffs had adequately pled material misstatements or omissions, the claims against Defendants would be dismissed due to Plaintiffs' failure to sufficiently plead facts supporting a strong inference of scienter.

a.      *Individual Defendants' Signed SOX certifications alone do not add to the finding of scienter*

Plaintiffs allege that certain Individual Defendants' SOX certifications[6] evidence the requisite scienter because those Individual Defendants allegedly knew the statements in the certifications were false and misleading. *E.g.*, SAC ¶¶ 352, 415, and 431. This barebones allegation of scienter is insufficient because "[a]n allegation that a defendant signed a SOX certification attesting to the accuracy of an SEC filing that turned out to be materially false does not add to the scienter puzzle in the absence of any allegation that the defendant knew he was signing a false SEC filing or recklessly disregarded inaccuracies contained in an SEC filing." *In re Hertz Global Holdings Inc.*, 905 F.3d 106, 118 (3d Cir. 2018); *In re*

---

[6] The SOX certifications stated that the Company's SEC filings fully complied with the Exchange Act and fairly represented the financial condition and results of operations of the Company when Defendants were allegedly downplaying the scope of the Company's wrongdoing and potential liability in the opioid-related litigation.

*Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266, 277 (S.D.N.Y. 2014) (emphasizing that allegations that an individual signed SEC filings would not be sufficient to show recklessness without more).

b.      *Defendant Campanelli's bonus and resignation do not support a finding of scienter*

Plaintiffs go further and allege that Defendant Campanelli's bonus and resignation support a finding of scienter because the timing of the two events were suspicious and abrupt. *See* SAC ¶¶ 284, 505, 519. These are barebones allegations not supported as a matter of law. First, Defendant Campanelli received a performance-based bonus in 2018, which, without more, does not support a finding of scienter. *See In re Amarin Corp. PLC., Sec. Litig.*, 2015 WL 3954190, at *11 (D.N.J. June 29, 2015); *see also Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 158-59 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (finding that because "[i]n today's corporate environment,…nearly all executives are compensated with stock options and incentive bonuses," the "receipt of incentive compensation, including performance-based bonuses, does not, by itself, establish [the] motive" necessary to establish scienter). Second, Defendant Campanelli's resignation eight weeks after the New York State Department of Financial Services ("DFS") announced it was investigating whether the Company had engaged in insurance fraud in connection with its marketing of opioids also does not support a finding of scienter. Other courts have found that executives resigning from a company without a plausible link to the alleged fraud has little to no probative value. *See Teamsters Local 237 Welfare Fund v. ServiceMaster Global Holdings, Inc.*, 2022 WL 989240 (W.D. Tenn. Mar. 31, 2022); *see also Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 240 (S.D.N.Y. Aug. 10, 2020) (concluding that "[t]erminations or resignations of corporate executives are insufficient alone to establish an inference of scienter."). The link between the DFS's investigation and Defendant Campanelli's resignation eight weeks later is tenuous because the two events did not occur contemporaneously, and Plaintiffs have not alleged that Defendant Campanelli received any form of corporate punishment. *See Fain v. USA Technologies, Inc.*, 707 Fed. App'x 91, 97 (3d Cir. 2017)

14

(finding that resignations or terminations "might form a 'piece to the scienter puzzle,'" "if, for example, a relatively contemporaneous and public firing is accompanied by extreme corporate punishment such as the denial of previously accord benefits.") (internal citation omitted); *see also In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 347 (D.N.J. 2007).

c. *Plaintiffs' remaining allegations do not support a finding of scienter*

Additionally, Plaintiffs remaining scienter allegations are insufficient to satisfy the PSLRA's "strong inference" requirement. *See In re Alpharma Sec. Litig.*, 372 F.3d, 137, 150 (3d Cir. 2004) (holding that "inferences of scienter do not survive if they are merely reasonable. Rather, inferences of scienter survive a motion to dismiss only if they are both reasonable and strong inferences.") (internal citation and quotation omitted).[7] First, Plaintiffs allege that the discovery violations found by a handful of other courts in the opioid-related litigation demonstrate that Defendants acted with scienter here. *See, e.g.*, SAC ¶ 505. Defendants' discovery violations are examples of misconduct, but do not allege a sufficient nexus between Defendants' state of mind and the alleged materially false or misleading statements resulting in settlement or victory in other opioid-related litigation. *See* D.E. 57 at Exs. 4, 6.

Second, Plaintiffs appear to allege that the mere occurrence of meetings at the highest levels, as well as Board meetings, where the opioid-related litigation was discussed show scienter. *See* SAC ¶¶ 505-09. During oral argument related to Defendant's motion to dismiss the FAC, the Court warned Plaintiffs that this type of allegation alone was insufficient for scienter:

> Of course they [meet and discuss the allegations in the opioid-related litigation]. They have all this ongoing litigation. Who wouldn't? I mean, the fact that they're meeting with them about litigation – they're in litigation. They disclosed there was litigation. It would be reckless not to talk about ongoing litigation that they've already disclosed, right? If they said, we never talked about the litigation, you'd say it was malfeasance. They talked about litigation.
> But beyond that, the fact that they talked about litigation, isn't that just speculating that they had some kind of scienter in light of all the other conduct

---

[7] In granting Defendants' first motion to dismiss, Judge Arleo warned Plaintiffs of relying on "rank speculation" for their scienter pleadings. D.E. 46 at Tr. 30:14-18.

15

> – that they didn't sell their stock, there's no other confidential informant saying what they might have said about what was going on: We know that this company is going under any day now, but we're just trying to keep it afloat; let's dump our stock. There's none of that here. It's just that they met and they talked about the litigation. That was in the minutes."

D.E. 46 at Tr. 31:3-21. Despite the Court's warning, Plaintiffs have not remedied their scienter pleading and have again pled that the mere occurrence of meetings, where the opioid-related litigation was discussed, is evidence of scienter. *Compare* FAC ¶¶ 146, 317, *with* SAC ¶¶ 282, 505. Instead, Plaintiffs doubled down on their deficient pleading by adding several paragraphs reiterating that these meetings were taking place, where the opioid-related litigation was discussed, but adding nothing of substance to Plaintiffs' scienter pleading. SAC ¶¶ 506-10. Without more, the fact that the opioid-related litigation was discussed within the Company does not provide a strong inference of scienter.

Plaintiffs invoke the core operations doctrine, which provides that when misrepresentations or omissions involve "core matters of central importance to the corporate defendant, a core operations inference supports scienter." *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 268 (3d Cir. 2009) (internal citations and quotations omitted). However, this doctrine requires that Plaintiffs' scienter pleading include some additional allegation of specific information that was conveyed to management and related to the fraud, which it does not. *See Carmignac Gestion, S.A. v. Perrigo Co. PLC*, 2019 WL 3451523, at *16 (D.N.J. July 31, 2019). Plaintiffs only really allege that meetings at the highest levels occurred and that the opioid-related litigation was discussed extensively. *See* SAC ¶ 505-09. As Defendants point out, Plaintiffs have not alleged any specific information that was conveyed to management and related to the fraud. *See id*. Consequently, the core operations doctrine does not apply.

Lastly, Plaintiffs allege that the corporate scienter doctrine applies here, but the Court rejects this allegation. As discussed above, several of Plaintiffs' allegations are speculative and the Third Circuit has

16

neither accepted nor rejected this doctrine in securities fraud actions. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 (3d Cir. 2013).

3.     *Whether Plaintiffs Have Alleged Loss Causation*

Defendants assert that Plaintiffs have not satisfied the burden of showing that Defendants' alleged misleading statements caused the loss for which they seek to recover damages. *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007). Loss causation requires both: (1) a sufficient causal connection between the alleged loss and the alleged misrepresentations; and (2) that the stock price dropped in response to the disclosure of the alleged misrepresentations. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 183-87 (3d Cir. 2000). But whether a plaintiff has proven causation is an issue reserved for the trier of fact, not a Court considering a motion to dismiss. *EP Medsystems, Inc.*, 235 F.3d at 884; *In re MobileMedia Securities Litig.*, 28 F. Supp. 2d 901, 940 (D.N.J. Oct. 21, 1998). Because the Court has concluded that Plaintiffs have failed to sufficiently plead the first two elements of a securities fraud claim, it is unnecessary to analyze Plaintiffs' allegations of loss causation.

**B.     Plaintiffs Fail to Sufficiently Plead a Violation of Section 20(a)**

Defendants contend that because Plaintiffs fail to state claim under Section 10(b) and do not plead facts showing each Individual Defendant was a culpable participant that their Section 20(a) claims must fail.

Section 20(a) of the Exchange Act provides for liability for controlling persons. 15 U.S.C. § 78t. Controlling persons are jointly and severally liable with the controlled person. *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 275 (3d Cir. 2005). For liability to attach, "plaintiffs must prove not only that one person controlled another person, but also that the 'controlled person' is liable under the [Exchange] Act." *Turfnofsky v. electroCore, Inc.*, 2021 WL 3579057, at *49-50 (D.N.J. Aug. 13, 2021) (quoting *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013)). But a Section 20(a) claim cannot

survive without an underlying violation of the Exchange Act. *See Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 279 (3d Cir. 1992). Because Plaintiffs have not adequately alleged an underlying securities violation, their § 20(a) claim fails.

### C. Plaintiffs Fail to Properly Move for Leave to Amend

Plaintiffs make a one-sentence request for leave to amend their complaint in the event that any of their pleadings are found deficient. D.E. 58 at 40.

Fed. R. Civ. P. 15 states that leave to amend "shall be freely given when justice so requires." However, the Third Circuit has held that "a District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). The Court believes it would be futile to allow another amendment in light of Plaintiffs: (1) failing to satisfy the stringent pleading requirements of the PSLRA, and thus failing to state a claim under federal securities law in their SAC; and (2) failing to propose an amendment that would satisfy these requirements in their SAC. *See In re Alpharma Sec. Litig.*, 372 F.3d at 153-54. Plaintiffs were already given an opportunity to cure the deficiencies in their complaint and were even provided with feedback before the previous motion to dismiss was granted and leave to amend was granted. *See* D.E. 46. Despite this, Plaintiffs did not sufficiently strengthen their pleadings in the SAC. Plaintiffs' Motion for Leave to Amend is denied.

### IV. CONCLUSION

For the reasons stated herein, Plaintiffs' SAC is hereby dismissed with prejudice. Plaintiffs' Motion for Leave to Amend is denied. An appropriate Order accompanies this Opinion.

Dated: August 17, 2022

_____
Hon. Evelyn Padin, U.S.D.J.